# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

*In re* BRADLEY ESTATE

Docket No. 145055.  Argued March 6, 2013 (Calendar No. 8).  Decided July 26, 2013.

Nancy Mick, as personal representative of the estate of Stephen Bradley, filed a contempt of court petition in the Kent County Probate Court against the Kent County Sheriff's Department.  Mick had obtained an order from the probate court on August 12, 2004, requiring that her brother, Bradley, be taken into custody for a psychiatric evaluation.  The sheriff's department failed to execute the pick-up order, and Bradley fatally shot himself on August 21, 2004.  Mick originally filed a wrongful-death action against the sheriff's department in the Kent Circuit Court, which the circuit court dismissed on the basis of governmental immunity, MCL 691.1407.  Mick then filed in the probate court a civil contempt petition that replicated the contents of her previous wrongful death complaint, asserting that the estate had suffered damages as a result of the sheriff's department's failure to execute the pick-up order, including but not limited to the damages set forth in the wrongful-death statute, MCL 600.2922.  The sheriff's department moved for summary disposition, arguing that under MCL 691.1407 it was immune from Mick's claim because she was essentially asking for tort damages.  The probate court, David M. Murkowski, J., denied the motion.  The sheriff's department appealed that decision in the circuit court, which reversed.  The circuit court, James R. Redford, J., concluded that Mick's claim for indemnification under MCL 600.1721 for losses caused by the contempt was barred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., because the underlying cause of action was based in tort.  The circuit court remanded the case to the probate court for entry of summary disposition in favor of the sheriff's department.  Mick appealed by leave granted.  The Court of Appeals, HOEKSTRA, P.J., and MARKEY and BORRELLO, JJ., reversed, concluding that the GTLA did not apply.  296 Mich App 31 (2012).  The Supreme Court granted the sheriff's department's application for leave to appeal to consider whether Mick's claim for civil contempt indemnification damages under MCL 600.1721 was barred by the GTLA.  493 Mich 866 (2012).

In an opinion by Justice KELLY, joined by Chief Justice YOUNG and Justices MARKMAN, ZAHRA, and VIVIANO, the Supreme Court *held*:

The phrase "tort liability" as used in MCL 691.1407(1) of the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages.  MCL 600.1721 imposes tort liability because it authorizes an award of compensatory damages to remedy a noncontractual civil wrong.  Thus, MCL 691.1407(1) of the GTLA provides governmental agencies with immunity from civil contempt petitions seeking compensatory damages under MCL 600.1721.

1. Under MCL 691.1407(1), a governmental agency is generally immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. A "tort" is an act that has long been understood in Michigan's common law as a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty for which a remedy may be obtained in the form of compensatory damages. As commonly understood, the word "liability" refers to the state or quality of being liable, and "liable" means to be legally responsible. Thus, "tort liability" as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages. It follows that "tort liability" is not limited to traditional tort claims. Rather, in determining the applicability of MCL 691.1407(1), courts must consider the entire claim and the focus must be on the nature of the liability rather than the type of action pleaded; the nature of the liability will often be reflected in the available remedy. Courts considering whether a claim involves tort liability should first focus on the nature of the duty that gives rise to the claim. If the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable. If the wrong is premised on the breach of a noncontractual duty, then the GTLA might apply to bar the claim. In that instance, the court must further consider the nature of the liability the claim seeks to impose. If the action permits an award of damages to a private party as compensation for an injury caused by the noncontractual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA applies.

2. MCL 600.1721 states that if contemptuous conduct has caused an actual loss or injury to any person, the court shall order the defendant to pay that person a sum sufficient to indemnify the person. The elements necessary to establish entitlement to relief under MCL 600.1721 are essentially the same elements necessary to establish a tort, i.e., a legal duty, breach of that duty, causation, and injury. The misconduct that might result in a finding of contempt involves the neglect or violation of a duty under MCL 600.1701 or the failure to perform an act or duty under MCL 600.1715. Thus, the misconduct is a noncontractual civil wrong. Because the first sentence of MCL 600.1721 authorizes a court to order a contemnor to indemnify the person whose losses were caused by the contemptuous conduct, the statute permits an award of damages to a private party as compensation for an injury caused by a noncontractual civil wrong. Accordingly, MCL 600.1721 contemplates what is, in essence, a tort suit for money damages, and a civil contempt petition seeking indemnification under the statute seeks to impose tort liability. It follows that a party who elects to pursue the statutory remedy available under MCL 600.1721 will be barred from obtaining relief against governmental agencies because those entities are entitled to immunity from tort liability under MCL 691.1407(1) of the GTLA. Courts are prohibited from exercising their contempt powers by punishing a governmental agency's contemptuous conduct through an award of indemnification damages under MCL 600.1721.

3. In this case, Mick sought compensatory damages for Bradley's death under MCL 600.1721. Thus, her petition sought to impose tort liability on a governmental agency. Had Mick sought to invoke the probate court's inherent contempt powers, i.e., to fine or imprison a contemnor, or had she otherwise established the applicability of an exception to governmental immunity, her claim might have survived summary disposition, but she did not. Consequently, because a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks

to impose tort liability, and a sheriff's department is immune from tort liability, Mick's claim was barred by governmental immunity under MCL 691.1407(1), and the sheriff's department was entitled to summary disposition under MCR 2.116(C)(7).

Judgment of the Court of Appeals reversed; case remanded to the probate court for entry of an order granting summary disposition in favor of the sheriff's department.

Justice CAVANAGH, dissenting, would have affirmed the result reached by the Court of Appeals. Justice CAVANAGH agreed with the majority that in determining whether an action imposes tort liability, the focus must be on the nature of the liability rather than the type of action pleaded. Contrary to the conclusion of the majority, a compensatory contempt sanction does not impose tort liability, primarily because that sanction is based on the contemptuous act itself. A contemptuous act is an act of disobedience to the court's ordinary exercise of its duties. Contemptuous conduct is not synonymous with the breach of a traditional tort duty because liability arising from tortious conduct stems from a breach of one's duty to another, not the breach of an obligation owed to the court. While the purpose of the relief sought may be a relevant inquiry when determining whether a type of liability is tort liability for purposes of the GTLA, the nature of the remedy is not dispositive. Thus, a compensatory contempt sanction does not impose tort liability simply because one of the purposes it serves, like tort damages, is remedial.

Justice McCORMACK, dissenting, disagreed with the majority's assertion that all noncontractual civil wrongs, including civil contempt, are torts, and would have affirmed the judgment of the Court of Appeals. Justice McCORMACK agreed with the majority that "tort liability" refers to legal responsibility arising from a tort, but concluded that contempt of court is not a tort no matter what remedy for contempt is imposed, and would not have interpreted the GTLA as granting immunity to governmental agencies from contempt sanctions under MCL 600.1721. Civil contempt does not sound in tort, and civil contempt sanctions do not impose tort liability. Tort law imposes a duty to avoid harmful conduct deemed tortious. Contempt law imposes a duty to obey the court. The duties are fundamentally different, as are their origins and the purposes they serve. While tort liability may lead to relief in the form of compensatory damages, that is not the only remedy available for tortious conduct, and compensatory damages are not unique to tort law. Neither the language of the GTLA nor the language of the contempt statute, MCL 600.1701, provide any basis for concluding that governmental actors are not subject to all of the permissible sanctions for contempt.

©2013 State of Michigan

# Opinion

Chief Justice:    Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                    Stephen J. Markman
                    Mary Beth Kelly
                    Brian K. Zahra
                    Bridget M. McCormack
                    David F. Viviano

FILED JULY 26, 2013

STATE OF MICHIGAN

SUPREME COURT

*In re* BRADLEY ESTATE

---

NANCY MICK, Personal Representative of
the ESTATE OF STEPHEN BRADLEY,
Deceased,

         Petitioner-Appellee,

v                                     No. 145055

KENT COUNTY SHERIFF'S
DEPARTMENT,

         Respondent-Appellant.

---

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

In this case, we decide whether a civil contempt petition that seeks
indemnification damages under MCL 600.1721 imposes "tort liability" within the
meaning of MCL 691.1407(1) of the governmental tort liability act (GTLA), MCL
691.1401 *et seq.* Given the Legislature's use of the common-law term "tort," we hold
that "tort liability" as used in MCL 691.1407(1) of the GTLA encompasses all legal

responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages. We further hold that MCL 600.1721 imposes "tort liability" because it authorizes an award of indemnification, or compensatory, damages to remedy a noncontractual civil wrong. Consequently, MCL 691.1407(1) of the GTLA provides governmental agencies with immunity from civil contempt petitions seeking indemnification damages under MCL 600.1721. Because the Court of Appeals reached a contrary conclusion, we reverse the judgment of the Court of Appeals and remand this case to the probate court for entry of an order granting summary disposition in favor of respondent.

## I. FACTS AND PROCEDURAL HISTORY

In the summer of 2004, petitioner, Nancy Mick, became increasingly concerned about the mental health of her brother, Stephen Bradley. She noticed that Bradley had grown "more agitated and violent," and he had admitted to her that he was suicidal. Petitioner feared that if Bradley did not receive help "he could kill himself and his family." As a result, in August 2004, she petitioned the Kent County Probate Court for Bradley's hospitalization, averring that Bradley was a danger to himself and his family. She accompanied her petition with a supplemental petition for examination and hospitalization, requesting a court order directing a peace officer to take Bradley into protective custody.

The probate court granted the petitions that same day and issued an order requiring that Bradley submit to psychiatric examination and requiring his hospitalization. The order specified that a "peace officer shall take [Bradley] into protective custody and

2

transport him . . . to [Cornerstone Community Mental Health or any community mental health contract facility]." Petitioner immediately submitted the order to respondent, the Kent County Sheriff's Department, for execution and provided additional details to the sergeant on duty concerning how petitioner expected Bradley to react to being taken into custody and the fact that Bradley possessed several firearms.

Respondent, however, did not timely execute the probate court's order. In the days that followed, petitioner contacted respondent twice in regard to Bradley's situation, and each time respondent assured her that the pickup would take place as soon as possible. Ultimately, respondent never attempted to take Bradley into protective custody and, nine days after the probate court entered its order, Bradley committed suicide.

After Bradley's suicide, petitioner wrote to Kent County Sheriff Lawrence A. Stelma, requesting an internal investigation, which ultimately concluded that the failure to execute the order was "an obvious case of simple neglect in that this petition was not executed in the manner that mental health petitions normally are handled."[1] Stelma informed petitioner by letter of the investigation's findings, confirming that the order had not been executed and describing respondent's failure as "an unusual occurrence" that did "not reflect any policy or procedure on the part of the Sherriff's Department . . . ."

[1] The investigation revealed that the sergeant who initially received the order could not execute it because she was on duty alone. She passed it onto the next sergeant who, in turn, assigned it to a deputy. The deputy, waylaid by other police business, passed the order to another officer who indicated that the order would be executed the following day. The order eventually came to rest at a police substation where it remained until the internal investigator found it on August 25, 2004. The investigation report indicated that "it appears as though [the officers] were all somewhat cognizant that the [order] was there; however, no one took initiative to either execute the [order] or access the computer to ascertain if the [order] had been served."

More than two years later, petitioner, acting as personal representative of Bradley's estate, filed a wrongful death suit against respondent and Stelma, alleging that they were grossly negligent in their failure to execute the probate court order and that their negligence was the proximate cause of Bradley's death. The circuit court dismissed the case on governmental immunity grounds, opining that respondent was not a legal entity that could be sued and that Stelma was individually immune from suit under the GTLA.

Petitioner did not appeal the circuit court's dismissal. Instead, she filed a petition for civil contempt in the probate court against respondent. The petition alleged that respondent's violation of the probate court's order constituted contempt of court, entitling her to indemnification damages pursuant to MCL 600.1721. The petition replicated the contents of petitioner's wrongful death complaint and sought damages "including, but not limited to, all of those damages set forth in the Michigan Wrongful Death Statute, MCL 600.2922, et seq."[2]

Respondent moved for summary disposition, arguing that it was immune from liability under MCL 691.1407(1) of the GTLA because petitioner sought to impose tort liability in the guise of a civil contempt petition.[3] The probate court denied respondent's

---

[2] Both the complaint and petition alleged that respondent "failed and refused to execute the Order issued by the Kent County Probate Court notwithstanding its mandate, delivery of the Order to [respondent], and the repeated inquiry regarding execution of the Order."

[3] Respondent also alleged that (1) petitioner failed to submit an affidavit from a person witnessing the contemptuous act as required by MCR 3.606(A), (2) respondent was not a legal entity capable of being sued, and (3) petitioner failed to show either a willful violation of the probate court order or the requisite causal link between the alleged contempt and Bradley's suicide as required by MCL 600.1701. These arguments are not

4

motion reasoning that "[g]overnmental immunity does not insulate a contemnor from the contemnor's refusal or negligence to obey a court order." The probate court acknowledged an "overlap of remedies between a court['s] power of contempt and a compensation that may be argued under tort," but concluded that this overlap did not impede a court's *inherent* authority to punish contempt.

Respondent appealed the probate court's ruling to the circuit court, which reversed and remanded the case to the probate court for entry of an order granting summary disposition in favor of respondent. Relying on the definition of "tort liability" articulated in *Tate v Grand Rapids*,[4] the circuit court concluded that petitioner's civil contempt petition was based in tort because the petition sought damages under the wrongful death statute. The circuit court, therefore, held that petitioner's claim was barred by the GTLA. While cognizant of courts' inherent authority to punish contempt, the circuit court concluded that the scope of that inherent authority is limited to the power to punish by fine or imprisonment. Because petitioner did not invoke the probate court's inherent power to punish contempt by either fine or imprisonment, but instead sought indemnification damages pursuant to MCL 600.1721, the court did not consider its holding—that petitioner's claim is barred by the GTLA—as infringing on courts' inherent contempt powers.

---

before this Court.

[4] *Tate v Grand Rapids*, 256 Mich App 656, 660; 671 NW2d 84 (2003).

5

The Court of Appeals granted petitioner's application for leave to appeal and, in a published opinion per curiam, reversed the circuit court's decision.[5] The Court of Appeals held that the GTLA does not immunize governmental agencies from "tort-like" damages sought pursuant to MCL 600.1721.[6] Relying on *Tate*[7] and *Ross v Consumers Power Co (On Rehearing)*,[8] the Court of Appeals opined that whether a "contempt claim can survive a governmental immunity challenge is controlled not by the nature of the damages sought, but by whether [the] contempt action is a cause of action that is separate and distinct from one that is grounded in tort liability."[9] The Court of Appeals explained:

> In accord with the *Ross* Court's holding that the GTLA will not bar recovery simply because the underlying facts could have also established a tort cause of action, we conclude that tort-like damages are recoverable in a contempt action assuming contempt can be proved. Thus, whether the GTLA implicates the viability of Mick's contempt action rests on whether Mick can successfully plead and establish a contempt cause of action. The nature of the damages being requested has no role in determining whether the action is barred by [the] GTLA. Consequently, the circuit court erred when it dismissed this case merely because the damages sought were similar to tort damages.[10]

---

[5] *In re Bradley Estate*, 296 Mich App 31; 815 NW2d 799 (2012).

[6] *Id.* at 38-39.

[7] *Tate*, 256 Mich App at 660-661.

[8] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 647-648; 363 NW2d 641 (1984).

[9] *In re Bradley Estate*, 296 Mich App at 38-39.

[10] *Id.* at 39 (citation omitted).

6

We granted respondent's application for leave to appeal to consider whether "petitioner's claim for civil contempt indemnification damages under MCL 600.1721 is barred by the [GTLA]."[11]

## II. STANDARD OF REVIEW

We review de novo a decision on a motion for summary disposition.[12] Under MCR 2.116(C)(7), summary disposition is appropriate when a claim is barred by governmental immunity.[13] A party filing suit against a governmental agency bears the burden of pleading his or her claim in avoidance of governmental immunity.[14]

We also review de novo issues of statutory interpretation.[15] When construing a statute, we consider the statute's plain language and we enforce clear and unambiguous language as written.[16] While terms must be construed according to their plain and ordinary meaning, words and phrases "as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."[17] Moreover, when the Legislature chooses to employ a common-

---

[11] *In re Bradley Estate*, 493 Mich 866 (2012).

[12] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[13] *Glancy v City of Roseville*, 457 Mich 580, 583; 577 NW2d 897 (1998).

[14] *Odom v Wayne Co*, 482 Mich 459, 478-79; 760 NW2d 217 (2008).

[15] *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011).

[16] *Id.* at 246-247.

[17] MCL 8.3a.

7

law term without indicating an intent to alter the common law, the term will be interpreted consistent with its common-law meaning.[18]

## III. ANALYSIS

Since Michigan became a state in 1837, Michigan jurisprudence has recognized the preexisting common-law concept of sovereign immunity, which immunizes the "sovereign" state from all suits to which the state has not consented, including suits for tortious acts by the state.[19] This common-law concept of sovereign immunity has since been replaced in Michigan by the GTLA and is codified by MCL 691.1407(1), which limits a governmental agency's exposure to tort liability.

Specifically, MCL 691.1407(1), which is at the center of this litigation, broadly provides that "a governmental agency is immune from *tort liability* if the governmental agency is engaged in the exercise or discharge of a governmental function."[20] Under the statute, *all* suits that seek to impose "tort liability" for an agency's discharge of a governmental function are barred by the GTLA, subject to several exceptions that the Legislature has expressly provided for in the GTLA and in other statutes authorizing suit against governmental agencies.[21] While conceding that none of these exceptions applies

---

[18] *Stone v Williamson*, 482 Mich 144, 170; 753 NW2d 106 (2008) (opinion by CAVANAGH, J.).

[19] *Ross*, 420 Mich at 598.

[20] Emphasis added. Likewise, individual governmental officers and employees may be entitled to immunity from "tort liability." See MCL 691.1407(2) and (5).

[21] See *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). The statutory exceptions contained in the GTLA are: (1) the highway exception, MCL 691.1402, (2) the motor vehicle exception, MCL 691.1405, (3) the public building exception, MCL

8

to the instant case, petitioner asserts that the immunity afforded by the GTLA is inapplicable because a civil contempt petition seeking indemnification damages does not seek to impose tort liability.

Whether a contempt order imposing indemnification damages imposes tort liability is not readily apparent; the GTLA does not define the phrase "tort liability" and our caselaw has not offered a definition of the phrase. Moreover, the contempt statutes under which petitioner brings suit include no express reference to the imposition of "tort liability." The civil contempt petition in the instant case is based on the general contempt statute of MCL 600.1701, a provision of the Revised Judicature Act (RJA), MCL 600.101 *et seq.*, that identifies potentially punishable contemptuous conduct. This provision, which is a codification of courts' power at common law to punish contemptuous conduct,[22] states in relevant part:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any *neglect or violation of duty or misconduct* in all of the following cases:
>
> * * *
>
> (c) All attorneys, counselors, clerks, registers, sheriffs, coroners, and all other persons in any manner elected or appointed to perform any judicial or ministerial services, for any misbehavior in their office or trust, or for any willful neglect or violation of duty, for disobedience of any process of

---

691.1406, (4) the governmental hospital exception, MCL 691.1407(4), (5) the proprietary function exception, MCL 691.1413, and (6) the sewage system event exception, MCL 691.1417.

[22] *In re Contempt of Dougherty*, 429 Mich 81, 91 n 14; 413 NW2d 392 (1987), citing Const 1963, art 6, § 1.

the court, or any lawful order of the court, or any lawful order of a judge of the court or of any officer authorized to perform the duties of the judge.

* * *

(g) Parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court.[23]

By its plain terms, MCL 600.1701 allows courts to exercise their inherent contempt powers for the purpose of either coercing a contemnor to comply with the court's order (civil contempt) or punishing a contemnor for contemptuous conduct (criminal contempt) by imposing a "fine or imprisonment, or both . . . ."[24]

In addition to the coercive and punitive sanctions permitted for civil and criminal contempt under MCL 600.1701, a court, in a civil contempt proceeding, may also order indemnification of those persons who have sustained losses as a result of contemptuous conduct under MCL 600.1721.[25]  This statute, on which petitioner relies, provides that "[i]f the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him . . . ."[26]

---

[23] MCL 600.1701 (emphasis added).  See also MCL 600.1715(2) (providing punishment for contemptuous conduct consisting of "the omission to perform some act or duty . . . .").

[24] See also MCL 600.1715(1), which generally limits the fine for contempt to not more than $7,500 and the term of imprisonment to no more than 93 days.

[25] A contempt proceeding seeking indemnification damages is a civil contempt proceeding.  *In re Contempt of Dougherty*, 429 Mich at 111 ("A proper civil contempt proceeding [may] seek[] . . . to compensate the complainant for actual loss.").

[26] MCL 600.1721.

The contemptuous misconduct referred to in these contempt statutes, however, does not clearly constitute tortious action such that petitioner's civil contempt petition would necessarily impose tort liability for purposes of the GTLA. Whether petitioner's claim is barred by the GTLA thus requires two related inquires. First, we must determine the meaning of the phrase "tort liability" as used in MCL 691.1407(1) of the GTLA; and, second, we must decide whether a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks to impose tort liability, such that the GTLA would prohibit petitioner's claim.

## A. TORT LIABILITY

As noted, the GTLA does not define the phrase "tort liability," nor has this Court previously determined the meaning of that phrase. The lower courts applied the definition of "tort liability" articulated by the Court of Appeals in *Tate*, a case involving a statute that imposes strict liability on dog owners for injuries resulting from dog bites.[27] In *Tate*, the plaintiff sought to avoid application of the GTLA by arguing that strict-liability actions fell outside the scope of tort liability.[28] In rejecting the plaintiff's argument, the Court of Appeals explained, "The GTLA unambiguously grants immunity from *all* tort liability, i.e., all civil wrongs for which legal responsibility is recognized, regardless of how the legal responsibility is determined, except as otherwise provided in the GTLA."[29]

---

[27] *Tate*, 256 Mich App at 658.

[28] *Id.* at 659.

[29] *Id.* at 660. Consistent with this definition, the Court of Appeals explained that "strict

11

We do not necessarily disagree with *Tate*'s general understanding of the phrase "tort liability." However, in our judgment, *Tate*'s definition is incomplete and fails to acknowledge the historical underpinnings of the word "tort" as that word has been used in our common law for more than a hundred years. Mainly, a "tort" is an act that has long been understood as a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty.[30] For example, English common-law courts have for centuries recognized a civil wrong as an infringement on private rights belonging to individuals and divided civil wrongs into two categories: those sounding in contract and those sounding in tort.[31] The Queen's Bench has acknowledged this division in a case

liability is based on tort law and may result in tort liability, i.e., civil liability for wrongful conduct." *Id.*

[30] As Sir Edward Coke explained, "wrong or injury is in French aptly called *tort*; because injury and wrong is wrested or crooked, being contrary to that which is right and straight." I Coke, The First Part of the Institutes of the Laws of England (Butler's 1st American ed, 1853), p 158b.

[31] See *Sinclair v Brougham*, [1914] AC 398 (HL), 415 (1914) (Viscount Haldane, LC) ("[B]roadly speaking, so far as proceedings in personam are concerned, the common law of England really recognises (unlike the Roman law) only actions of two classes, those founded on contract and those founded on tort."); *id.* at 432 (Lord Dunedin) ("The English common law has various actions which, under a classification which I understand to be really one of modern growth, are divided into actions in respect of contract and of tort."); *Bryant v Herbert*, 3 CPD 389, 390 (1878) (Bramwell, LJ) ("One may observe there is no middle term; the statute supposes all actions are founded either on contract or on tort. So that it is tort, if not contract, contract if not tort."). These English common-law cases are consistent with the understanding of tort espoused by Sir William Blackstone in his 1771 Commentaries, which make the same distinction:

> Personal actions are such whereby a man claims a debt, or personal duty, or damages in lieu thereof: and, likewise, whereby a man claims a satisfaction in damages for some injury done to his person or property. The former are said to be founded on contracts, the latter upon *torts* or wrongs . . . . Of the former nature are all actions upon debt or promises; of

12

involving a bailee's liability for injury to the plaintiff's horse, in which it concluded that

the legal basis for the plaintiff's claim was a tort and that damages to compensate for the

injury should be allowed.  Lord Justice Smith explained:

> [I]f in order to make out a cause of action it is not necessary for the plaintiff to rely on a contract, the action is one founded on tort; but, on the other hand, if, in order successfully to maintain his action, it is necessary for him to rely upon and prove a contract, the action is one founded upon contract.[32]

The Queen's Bench, then, recognized only two types of civil wrongs, those involving

contractual wrongs and those involving the breach of some other legal duty, the latter of

which is a tort and is remedied through an award of compensatory damages.[33]

---

> the latter all actions for trespasses, nuisances, assaults, defamatory words and the like.  [3 Blackstone, Commentaries on the Laws of England (Jones ed., 1976), p *117.]

[32] *Turner v Stallibrass*, 1 QB 56, 58 (1898) (A.L. Smith, LJ).  See also *id.* at 59 (Rigby, LJ) ("The rule is that, if the plaintiff, in order to shew [sic] a cause of action, must rely on a contract, the action is one founded on contract; otherwise it is one of tort.").

[33] As noted, this understanding of a tort is reflected in Sir William Blackstone's Commentaries.  Aside from recognizing that only two types of civil wrongs exist, Blackstone's Commentaries also repeatedly confirm that tort actions involve a particular type of compensation—compensatory damages.  See 3 Blackstone, p *138 (stating that "[t]he *satisfactory* remedy for this injury of false imprisonment" is that "the party shall recover damages for the injury he has received"); 3 Blackstone, pp **145-146 (stating that the proper remedy for the wrongful taking of goods is "the restitution of the goods themselves so wrongfully taken, with damages for the loss sustained by such unjust invasion," and that the law in this regard "contents itself in general with restoring, not the thing itself, but a pecuniary equivalent to the party injured; by giving him a satisfaction in damages"); 3 Blackstone, p *220 (stating that when a private person suffers damage by a public nuisance, the remedies by suit are "[b]y action *on the case* for damages; in which the party injured shall only recover satisfaction for the injury sustained; but cannot thereby remove the nuisance").

13

Michigan common law, which has its roots in English common law, has likewise recognized this distinction between torts and contracts as the two types of civil wrongs.[34] For example, in *Churchill v Howe*,[35] this Court considered whether a debtor's liability was limited to the parties' contractual relations. In concluding that the creditor's allegations of fraud sounded in tort, we acknowledged the general principles that a tort requires a "wrong independent of a contract" and that "the distinguishing feature of a tort [is] that it consists in the violation of a right given or neglect of a duty imposed by law, and not by contract."[36] Stated differently, and as this Court has repeatedly recognized in the nearly one hundred years since *Churchill*, when a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort.[37]

---

[34] As former Chief Justice of the Michigan Supreme Court THOMAS M. COOLEY recognized in Cooley, A Treatise on the Law of Torts (2d ed, 1888), p 2, "It is customary in the law to arrange the wrongs for which individuals may demand legal redress into two classes: the first embracing those which consist in a mere breach of contract, and the second those which arise independent of contract."

[35] *Churchill v Howe*, 186 Mich 107; 152 NW 989 (1915).

[36] *Id*. at 111, 114 (citation and quotation marks omitted).

[37] See, e.g., *O'Neill v James*, 138 Mich 567, 573; 101 NW 828 (1904) (quoting caselaw stating that a party who commits a wrong independent of contract "brings himself within the operation of a principle of the law of torts") (citation and quotation marks omitted); *Hart v Ludwig*, 347 Mich 559, 563; 79 NW2d 895 (1956) (approvingly quoting caselaw stating that as a general rule, to support a cause of action in tort, there "must be some breach of duty distinct from breach of contract") (citation and quotation marks omitted); *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239, 246-247; 531 NW2d 144 (1995) (holding that the duty not to retaliate against an employee for filing a workers' compensation claim arises independently from the employment contract and thus sounds in tort).

Our common law likewise incorporates the concept that a tort necessarily involves compensation to an injured party for the wrong committed by a tortfeasor.[38] As we explained in *Wilson v Bowen*,[39] a case involving an award of damages for malicious prosecution, "the purpose of an action of tort is to recover the damages which the plaintiff has sustained from an injury done him by the defendant; that *compensation* to the plaintiff is the purpose in view . . . ."

Given the foregoing, it is clear that our common law has defined "tort" to be a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages. Accordingly, because the word "tort" has "acquired a peculiar and appropriate meaning" in our common law, and because the Legislature is presumed to be aware of the common law when enacting legislation, we conclude that the term "tort" as used in MCL 691.1407(1) is a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages.[40]

---

[38] *Stillson v Gibbs*, 53 Mich 280, 284; 18 NW 815 (1884) ("The purpose of an action for tort is to recover the damages which the plaintiff has sustained from an injury done him by the defendant."); *Kalembach v Michigan Cent R Co*, 87 Mich 509, 524; 49 NW 1082 (1891) (MCGRATH, J., dissenting) (recognizing that recovery for a tort requires "a wrong as well as damage").

[39] *Wilson v Bowen*, 64 Mich 133, 141; 31 NW 81 (1887).

[40] MCL 8.3a; *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006) ("[C]ommon-law meanings are assumed to apply . . . in the absence of evidence to indicate contrary meaning.") (citation and quotation marks omitted). This definition is consistent with modern authorities' understanding of the term "tort" as "[a] civil wrong, other than breach of contract, for which a remedy may be obtained, [usually] in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another." Black's Law Dictionary (9th ed); see also Prosser & Keeton, Torts (5th ed), § 1, p 2.

Our analysis, however, requires more. MCL 691.1407(1) refers not merely to a "tort," nor to a "tort claim" nor to a "tort action," but to "tort *liability*." The term "tort," therefore, describes the type of liability from which a governmental agency is immune. As commonly understood, the word "liability," refers to liableness, i.e., "the state or quality of being liable."[41] To be "liable" means to be "legally responsible[.]"[42] Construing the term "liability" along with the term "tort," it becomes apparent that the Legislature intended "tort liability" to encompass legal responsibility arising from a tort. We therefore hold that "tort liability" as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages.[43]

In reaching this holding, we are cognizant of our decision in *Ross*, on which the Court of Appeals relied in concluding that "tort-like damages are recoverable in a contempt action" against a governmental entity.[44] Our opinion in *Ross* actually concerned nine cases, including *Rocco v Department of Mental Health*. In that case, the plaintiffs' decedent was murdered while he was a patient at a hospital administered by

---

[41] *Random House Webster's College Dictionary* (2001). Similarly, Black's Law Dictionary (7th ed) defines "liability" as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment" and as "a financial or pecuniary obligation[.]"

[42] *Random House Webster's College Dictionary* (2001).

[43] Petitioner argues that this understanding of tort liability is overly inclusive, but offers no alternative definition for the term "tort." Moreover, while our definition of "tort" is stated in broad terms, it is consistent with the common-law understanding of that term as adopted by our Legislature in MCL 691.1407(1).

[44] *In re Bradley Estate*, 296 Mich App at 39.

16

two state agencies. The plaintiffs filed a two-count complaint alleging both negligence and breach of an implied contract. We held that the GTLA barred the plaintiffs' negligence claim, but that the plaintiffs' second claim, breach of an implied contract, was not barred. The defendants had argued that the plaintiffs' contract claim should be dismissed because "most of the allegations contained in Counts I and II are identical . . . ."[45] In rejecting that argument, we stated:

> We recognize that plaintiffs have and will attempt to avoid [MCL 691.1407(1)] of the governmental immunity act by basing their causes of action on theories other than tort. Trial and appellate courts are routinely faced with the task of determining whether the essential elements of a particular cause of action have been properly pleaded and proved. If a plaintiff successfully pleads and establishes *a non-tort cause of action*, [MCL 691.1407(1)] will not bar recovery simply because the underlying facts could have also established a tort cause of action.[46]

Petitioner and the Court of Appeals interpret this passage from *Ross* to mean that the label of the action controls in determining whether an action imposes tort liability and that, if the claim is not a traditional tort, then the GTLA is inapplicable and "tort-like" damages are recoverable. *Ross*, however, made no such pronouncement and did not consider the meaning of "tort liability," which is the question that is now before this Court. Instead, consistent with our holding in this case, *Ross* merely recognized that the GTLA does not bar a properly pleaded contract claim.[47]

---

[45] *Ross*, 420 Mich at 647.

[46] *Id.* at 647-648 (emphasis added).

[47] *Id*. at 647-648; *id*. at 693-694 (opinion by LEVIN, J.) ("The language of [MCL 691.1407(1)], however, speaks only to immunity from tort liability; it does not grant immunity from contract claims.").

17

In addition, our holding clarifies that *Ross*'s pronouncement, that "non-tort cause[s] of action" are not barred by the GTLA, should not be interpreted as limiting the GTLA's application to only traditional tort claims.[48] The Legislature's express decision to use the word "liability" in describing the governmental immunity available under MCL 691.1407(1), rather than "action" or "claim," indicates that our focus must be on the *nature* of the liability rather than the type of action pleaded. For this reason, we decline to limit the GTLA's application to suits expressly pleaded as traditional tort claims, as petitioner would have us hold.[49] Further, because the nature of the liability will often be reflected in the remedy available, we disagree with the Court of Appeals' statement that "[t]he nature of the damages being requested has no role in determining whether the action is barred by the GTLA."[50] Instead, because a tort, by definition, encompasses an award of compensatory damages, the nature of the damages is precisely relevant in

---

[48] *Ross*, 420 Mich at 647-648.

[49] To follow petitioner's suggestion, which Justice MCCORMACK also appears to advocate, would exalt form over substance when, instead, we have long recognized that a party's choice of label for a cause of action is not dispositive and "the gravamen of [a] plaintiff's action is determined by considering the entire claim." *Maiden*, 461 Mich at 135. Moreover, we have held on numerous occasions that some causes of action that are not traditional torts nonetheless impose tort liability within the meaning of the GTLA. See, e.g., *Donajkowski v Alpena Power Co*, 460 Mich 243, 247; 596 NW2d 574 (1999) (sex discrimination in violation of the Civil Rights Act); *Phillips*, 448 Mich at 248-249 (retaliatory discharge in violation of Worker's Disability Compensation Act); *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 165; 809 NW2d 553 (2011) (statutory duties may give rise to tort claim); see also *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 275; 826 NW2d 519 (2012) (statutory "retaliation torts"); *4041-49 W Maple Condo Ass'n v Countrywide Home Loans, Inc*, 282 Mich App 452, 459; 768 NW2d 88 (2009) (failure to provide notice under foreclosure statute).

[50] *In re Bradley Estate*, 296 Mich App at 39.

determining whether the type of liability imposed is tort liability.[51]   Accordingly, regardless of how a claim is labeled, courts must consider the entire claim, including the available damages, to determine the nature of the liability imposed.[52]

In summary, several principles emerge from our explication of the phrase "tort liability" that will guide courts charged with the task of determining whether a cause of action imposes tort liability for purposes of the GTLA.  Courts considering whether a claim involves tort liability should first focus on the nature of the duty that gives rise to the claim.  If the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable.[53]  However, if the wrong is not premised

---

[51] Indeed, to ignore the type of the damages sought would be to ignore the correlation between the wrong alleged and the available remedy.  See *Nat'l Copper Co v Minnesota Mining Co*, 57 Mich 83, 93; 23 NW 781 (1885) ("[D]amage alone does not give a right of action; there must be a concurrence of wrong and damage.").  As we have explained, tort damages traditionally take the form of compensatory damages.  See, e.g., *Wilson*, 64 Mich at 141.  Although other remedies might be available in some circumstances, "'an action for damages is the essential remedy for a tort,'" and "'in all such cases it is solely by virtue of the right to damages that the wrong complained of is to be classed as a tort.'" Prosser & Keeton, Torts (5th ed), § 1, p 2 n 6, quoting Salmond, Law of Torts (12th ed), p 9.

[52] Justice MCCORMACK pens an eloquent and engaging discussion of the sui generis nature of contempt, one that we do not necessarily disagree with regarding *contempt*.  Where we do differ, however, is in our belief that this case presents a more nuanced issue, namely whether a petitioner can recast a wrongful death claim that is barred by the GTLA as a claim for civil contempt and obtain indemnification damages under MCL 600.1721, which are exactly the same as those damages sought under the wrongful death statute.  We see the issue differently, but have not "confuse[d] legal categories" in the least.

[53] In that instance, we emphasize that the plaintiff would be limited to the recovery of contract damages.  If a plaintiff seeks the recovery of tort damages stemming from the breach of a contractual duty, then the plaintiff's claim would be insufficient as a matter of law under MCR 2.116(C)(8).

on a breach of a contractual duty, but rather is premised on some other civil wrong, i.e., some other breach of a legal duty, then the GTLA might apply to bar the claim. In that instance, the court must further consider the nature of the liability the claim seeks to impose. If the action permits an award of damages to a private party as compensation for an injury caused by the noncontractual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable.[54]

## B. CIVIL CONTEMPT INDEMNIFICATION DAMAGES

The civil contempt petition in this case alleges that respondent's contemptuous misconduct, prohibited by MCL 600.1701, caused Bradley's suicide and seeks indemnification damages under MCL 600.1721. Because petitioner's civil contempt petition seeks indemnification under MCL 600.1721, we must construe the language of that provision to determine whether such petitions impose tort liability. The provision states:

> If the *alleged misconduct has caused an actual loss or injury* to any person the court shall order the defendant to pay such person a sufficient

---

[54] This step of the analysis is fundamental to determining whether an action involving a noncontractual civil wrong seeks to impose tort liability. This is because, in some instances, a noncontractual civil wrong might exist, but instead of seeking compensation to remedy the harm, the plaintiff elects some other remedy, thus rendering governmental immunity inapplicable. For example, a plaintiff may ask a court to enforce his or her rights under the law. See *Lash v Traverse City*, 479 Mich 180, 196; 735 NW2d 628 (2007) (recognizing that governmental immunity barred a plaintiff's private cause of action seeking monetary damages for an alleged statutory violation, but noting that the plaintiff could enforce the statute by seeking declaratory or injunctive relief); *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 152 n 5; 422 NW2d 205 (1988) (opinion by BRICKLEY, J.) ("Generally, we do not view actions seeking only equitable relief, such as abatement or injunction, as falling within the purview of governmental immunity."), overruled on other grounds by *Pohutski v City of Allen Park*, 465 Mich 675 (2002).

sum to *indemnify him*, in addition to the other penalties which are imposed upon the defendant. *The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.*[55]

Although we have not previously considered whether this language imposes "tort liability," this Court has implicitly recognized that the elements necessary to establish entitlement to relief under this provision are essentially the same elements necessary to establish a tort, i.e., a legal duty, breach of that duty, causation, and injury. In *Holland v Weed*,[56] for example, we explained that the predecessor of MCL 600.1721

> authorizes this imposition [of indemnification damages] in place of a fine, and it is for the purpose of protecting the civil rights and remedies of the party, and to *compensate him for the injury or loss occasioned by the misconduct alleged*; and it is only when an actual loss or injury has been produced to the party by the misconduct alleged, and that is made to appear to the satisfaction of the court, and some sum sufficient to compensate the party or indemnify him is adjudged, that the court can impose the costs and expenses to be paid by such party.[57]

Stated differently, the plain language of MCL 600.1721 requires a showing of contemptuous misconduct that caused the person seeking indemnification to suffer a loss

---

[55] MCL 600.1721 (emphasis added).

[56] *Holland v Weed*, 87 Mich 584, 587-588; 49 NW 877 (1891).

[57] Emphasis added. The statute was substantially similar when *Holland* was decided. It provided:

> If an actual loss or injury has been produced to any party, by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him, and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case, the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party, to recover damages for such injury or loss. [How Stat § 7277.]

21

or injury and, if these elements are established, requires the court to order the contemnor to pay "a sufficient sum to indemnify" the person for the loss.

A closer examination of the statutory language confirms that it contains all the elements of a tort claim in the guise of a contempt claim. Under the first sentence of the statute, the "alleged misconduct," which is a necessary element of any contempt claim, stems from the "neglect or violation of [a] duty" under MCL 600.1701 or the "omission to perform an act or duty" under MCL 600.1715. Thus, the "alleged misconduct" is synonymous with the legal duty and breach of that duty recognized in traditional tort law. Clearly, this misconduct, which arises from the relevant contempt statute—not a contractual relationship between the parties—is a noncontractual civil wrong.

Because the nature of the duty that gives rise to a civil contempt claim is clearly premised on a noncontractual civil wrong, we must further consider the nature of the liability imposed. The first sentence of MCL 600.1721 also requires that this misconduct "cause[]" the petitioner's "actual loss or injury," thus paralleling the other two elements recognized in a traditional tort claim: causation and damages. Because the first sentence of MCL 600.1721 authorizes a court to order a contemnor to "indemnify" the petitioner for the loss caused by the contemptuous misconduct, the statute clearly sanctions legal responsibility, or liability, in the form of compensatory damages.[58] Plainly, the first

---

[58] "Indemnify" is commonly understood to mean "to compensate for damage or loss sustained, expense incurred[.]" *Random House Webster's College Dictionary* (2001). And we have previously characterized the relief provided under MCL 600.1721 as compensatory. See *In re Contempt of Dougherty*, 429 Mich at 98.

22

sentence of MCL 600.1721 contemplates what is, in essence, a tort suit for money damages.[59]

Additional support for this conclusion is found in the second sentence of MCL 600.1721, which provides that "[t]he payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury." That is, the Legislature expressly recognized that a civil contempt claim seeking indemnification damages functions as a substitute for any underlying claim and, thus, bars monetary recovery that could have been achieved in a separate cause of action. As the Legislature acknowledged, the statutory remedy, then, is effectively a proxy for a tort claim.[60]

---

[59] Justice CAVANAGH posits that a civil contempt petition seeking indemnification damages under MCL 600.1721 does not impose tort liability because the liability imposed arises, not from the breach of a "tort duty," but from the breach of an "obligation owed to the court." The Legislature, however, did not use the phrase "tort *duty*" in MCL 691.1407(1), but instead used the phrase "tort *liability*" thereby invoking consideration of all noncontractual civil wrongs consistent with the common-law meaning of "tort." Moreover, while Justice CAVANAGH agrees that the purpose of the relief sought is relevant to determining whether tort liability exists, he ignores that MCL 600.1721 expressly permits an award of compensatory damages to "any person" who suffered an injury as a result of the contemptuous act and does not award indemnification damages to the court, which is the party owed a duty under Justice CAVANAGH's analysis. Stated otherwise, a civil contempt petition seeking indemnification damages under MCL 600.1721 does not seek to redress the harm a court may have suffered as a result of the contemptuous act; rather, such a petition seeks to compensate the person who suffered injury from that civil wrong, and therefore the petition is squarely within the meaning of "tort liability."

[60] Justice MCCORMACK does not analyze the express statutory language of MCL 600.1721 and instead relies on a series of inferences to discern the meaning of the law. Specifically, Justice MCCORMACK reads MCL 600.1701(c) as an express indication that the Legislature intended to waive any claim that government contemnors are immune from liability for civil contempt indemnification damages. However, the express

Given that the statutory language of MCL 600.1721 clearly permits the payment of compensatory damages to a petitioner for a noncontractual civil wrong, we thus hold that a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks to impose "tort liability."[61] It follows that a party that elects to pursue the statutory remedy available under MCL 600.1721 will be barred from obtaining relief against governmental agencies because those entities are entitled to immunity from "tort

statutory language of MCL 600.1701 does not include "defendant," as that term is used in MCL 600.1721, among the listed state actors, and we would draw no such inference. Compare MCL 600.1721 and MCL 600.1701 with other statutes expressly waiving governmental immunity, including the Elliot-Larsen Civil Rights Act, MCL 37.2103(g), MCL 37.2201(a), and MCL 37.2202 (defining "employer" to expressly include state actors who are in turn liable for certain discriminatory conduct); and the Persons with Disabilities Civil Rights Act, MCL 37.1103(g), MCL 37.1201(b), and MCL 37.1202 (same). Nor do we view MCL 691.1407(6), as Justice MCCORMACK does, to inform the meaning of "tort liability" used in MCL 691.1407(1). MCL 691.1407(6), which grants immunity to guardian ad litems from "civil liability," is simply not implicated in this case. We also do not believe the Legislature's placement of the contempt statutes in the RJA has any relevance to the meaning of "tort liability."

[61] Contrary to our holding, petitioner asserts that her contempt petition cannot be classified as a tort because there is not "a hint anywhere" in Michigan jurisprudence suggesting that contempt is a tort. Our discussion in *Holland*, 87 Mich at 587-588, referred to earlier in this opinion, suggests otherwise. Moreover, petitioner makes this argument without any reference to the statutory language of MCL 600.1721, which as we have explained supports the conclusion that a civil contempt claim seeking indemnification damages imposes tort liability. In any case, we are not alone in recognizing that a civil contempt claim asking for compensatory damages imposes tort liability. See, e.g., *Dodson v Dodson*, 380 Md 438, 453; 845 A2d 1194 (2004) ("This litigation, although labeled a civil contempt action, was in essence a tort suit for money damages . . . ."); *Parker v United States*, 153 F2d 66, 70 (CA 1, 1946) ("An order imposing a compensatory fine in a civil contempt proceeding is . . . somewhat analogous to a tort judgment for damages caused by wrongful conduct."); *Vuitton et Fils SA v Carousel Handbags*, 592 F2d 126, 130 (CA 2, 1979) (noting that imposition of a compensatory fine for civil contempt is analogous to a tort judgment for damages); *Thompson v Cleland*, 782 F2d 719, 722 (CA 7, 1986) (noting the same).

liability" under MCL 691.1407(1) of the GTLA. The logical result of this conclusion is that courts are prohibited from exercising their contempt powers by punishing a governmental agency's contemptuous conduct through an award of indemnification damages under MCL 600.1721.

Our holding, however, should not be interpreted as constraining courts' inherent contempt powers. While our holding does constrain a court's *statutory* authority to order punishment in the form of compensation in a civil contempt proceeding against a governmental entity,[62] our holding does not infringe on those powers of contempt that are *inherent* in the judiciary, as recognized in our Constitution and codified by the Legislature.[63] Inherent in the judicial power is the power to prescribe *acts* that are punishable as contempt through fine or imprisonment, or both.[64] This inherent judicial power to punish contempt, which is essential to the administration of the law, does not include the power to mete out certain punishments for contemptuous acts beyond those

---

[62] The Legislature authorized the award of compensatory damages in the contempt context with the enactment of 1846 RS, ch 121, § 21, the original predecessor of MCL 600.1721.

[63] See Const 1963, art 6, § 1; *Langdon v Judges of Wayne Circuit Court*, 76 Mich 358, 367; 43 NW 310 (1889) ("The [contempt] statutes are in affirmation of the common-law power of courts to punish for contempts . . . .").

[64] As this Court explained in *In re Huff*, 352 Mich 402, 415-416; 91 NW2d 613 (1958):

> There is inherent power in the courts, to the full extent that it existed in the courts of England at the common law, . . . to adjudge and punish for contempt . . . . Such power, being inherent and a part of the judicial power of constitutional courts, cannot be limited or taken away by act of the legislature nor is it dependent on legislative provision for its validity or procedures to effectuate it. [Citation omitted.]

25

contempt powers inherent in the judiciary.[65]  Clearly, the punishment the Legislature

authorized in MCL 600.1721, compensation for contemptuous misconduct, is not

encompassed by the judiciary's inherent power to punish contempt.  Because our holding

only involves the GTLA's application to civil contempt petitions that seek

indemnification damages under MCL 600.1721, it does not infringe on courts' inherent

power to punish contempt by fine or imprisonment, or both.[66]  Moreover, our definition

of "tort liability" does not encompass contempt proceedings that seek to invoke courts'

inherent contempt powers; although those proceedings undoubtedly involve a

noncontractual civil wrong, the sanction sought does not impose legal responsibility in

the form of compensation for the harm done.[67]

---

[65] See *Nichols v Judge of Superior Court of Grand Rapids*, 130 Mich 187, 192-195; 89 NW 691 (1902) (indicating that the Legislature cannot determine what acts constitute contempt or constrain courts' power to punish those contemptuous acts, but that it may prescribe certain punishments); *Langdon*, 76 Mich at 367 (recognizing that the Legislature cannot curtail courts' contempt powers, but that it may "regulate[] the mode of proceeding and prescribe[] what punishment may be inflicted").  Justice MCCORMACK concedes that the Legislature can regulate the courts' contempt powers.  As *Nichols* and *Langdon* reflect, this regulation includes the ability to prescribe certain punishments, like that in MCL 600.1721, as long as the regulation does not curtail courts' inherent power to punish contemptuous acts.  As such, injection of separation of powers principles is misplaced.  Likewise, the suggestion that our decision has "cede[d]" judicial power is overstated because Michigan courts have never had an inherent power to punish contempt through an award of compensatory damages.

[66] Having concluded that no Michigan court possesses *inherent* power to award compensatory damages relating to contempt, we need not address the parties' disagreement whether the probate court, the powers of which are controlled by the Legislature, lacks the inherent power to punish contempt through fine or imprisonment.

[67] By stating "[e]ven if Michigan did not recognize a wrongful death action, hypothetically, respondent here could still have been held in contempt," Justice MCCORMACK errs in insinuating that a Court's inherent contempt powers include the ability to award compensatory damages to a third party for loss or injury.  The fact that

26

## C. APPLICATION

The civil contempt petition at issue here alleges that respondent negligently failed to execute the probate court's order, constituting contemptuous misconduct under MCL 600.1701. The petition alleges that this misconduct caused Bradley's suicide and seeks indemnification damages for his death under MCL 600.1721. Notably, the damages petitioner seeks in her contempt petition are exactly the same damages that petitioner sought under the wrongful death statute[68] in her previous lawsuit, which was dismissed on governmental immunity grounds. Indeed, the petition substantively replicated petitioner's prior complaint and sought damages "including, but not limited to, all of those damages set forth in the Michigan Wrongful Death Statute." (Citation omitted.) Through her civil contempt petition, then, petitioner plainly seeks compensatory damages for Bradley's death. Thus, her civil contempt petition seeks to impose tort liability.[69]

Had petitioner sought to invoke the probate court's inherent contempt powers, i.e., to fine or imprison a contemnor, or had petitioner otherwise established the applicability of an exception to governmental immunity, then petitioner's claim might have survived summary disposition. However, petitioner's civil contempt petition did not invoke the

---

the Legislature added the ability to impose tort liability to the Court's powers as a possible remedy for contempt does not resolve the issue whether that particular remedy may be used against governmental agencies in the face of the GTLA. If MCL 600.1721 did not exist, then Justice MCCORMACK's point would be valid.

[68] MCL 600.2922.

[69] We do not disagree with the concern that this Court must safeguard the power of the judicial branch, but note that this case did not involve the willful violation of a court order and the consequential offense to the issuing court, which is the very essence of contempt of court.

court's inherent powers of contempt, and she concedes that none of the GTLA's exceptions are applicable. Consequently, because a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks to impose tort liability, and respondent is immune from tort liability, petitioner's claim is barred by governmental immunity under MCL 691.1407(1). Respondent is therefore entitled to summary disposition under MCR 2.116(C)(7).

## IV. CONCLUSION

Consistent with the Legislature's intent, our decision clarifies that the phrase "tort liability" as used in MCL 691.1407(1) encompasses all legal responsibility arising from noncontractual civil wrongs for which a remedy may be obtained in the form of compensatory damages. We further recognize that the plain language of MCL 600.1721 authorizes an award of indemnification damages to remedy a noncontractual civil wrong and, thus, falls squarely within the meaning of "tort liability." Because MCL 691.1407(1) immunizes governmental agencies from tort liability, governmental entities are immune from civil contempt petitions seeking indemnification damages. Petitioner has pleaded such a claim here and because she has not otherwise established the applicability of an exception to the GTLA, respondent is entitled to immunity under

MCL 691.1407(1). We reverse the judgment of the Court of Appeals and remand this case to the probate court for entry of an order granting summary disposition in favor of respondent.

Mary Beth Kelly
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
David F. Viviano

29

STATE OF MICHIGAN

SUPREME COURT

*In re* BRADLEY ESTATE

_____

NANCY MICK, Personal Representative
of the ESTATE OF STEPHEN BRADLEY,
Deceased,

        Petitioner-Appellee,

v                             No. 145055

KENT COUNTY SHERIFF'S
DEPARTMENT,

        Respondent-Appellant.

_____

CAVANAGH, J. (*dissenting*).

At issue in this case is whether an order imposing a compensatory contempt sanction under MCL 600.1721[1] imposes "tort liability" for the purposes of MCL 691.1407(1) of the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. The majority holds that the Legislature intended to grant governmental defendants immunity from such orders, reasoning that MCL 600.1721 has a compensatory purpose and that a

---

[1] MCL 600.1721 states:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

petition for a compensatory contempt sanction under MCL 600.1721 is essentially a tort claim. Although the majority provides an insightful summary of the legal history of tort actions, the majority fails to provide an equally insightful explanation of the nature of civil contempt, which, in my view, leads the majority to its erroneous conclusion that an order imposing a compensatory contempt sanction imposes "tort liability" for the purposes of the GTLA. Rather, I would hold that a compensatory contempt sanction does not impose tort liability, primarily because that sanction is based on the contemptuous act itself. Thus, I respectfully dissent and would affirm the result reached by the Court of Appeals.

## I. OVERVIEW OF CONTEMPT PROCEEDINGS

In *In re Contempt of Dougherty*, 429 Mich 81, 104-107; 413 NW2d 392 (1987), we considered whether "anticipatory contempt" was a proper use of the court's contempt power, holding that the future intent to violate a court order was not subject to the court's contempt power. That issue is not present in this case; however, *In re Contempt of Dougherty* is helpful because it provides an excellent analysis of the sui generis nature of contempt proceedings. *Id.* at 90-91. Specifically, *In re Contempt of Dougherty* recognized that "contempts are 'neither wholly civil nor altogether criminal . . . .'" *Id.* at 91, quoting *Gompers v Bucks Stove & Range Co*, 221 US 418, 441; 31 S Ct 492; 55 L Ed 797 (1911). Further, we explained that it is often necessary to characterize a contempt proceeding as criminal or civil and that the determining difference is the character and purpose of the punishment imposed on the contemnor. *Id.* at 92-93, quoting *Gompers*, 221 US at 441 ("'If it is for civil contempt the punishment is remedial, and for the benefit

2

of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'").

To aid courts in characterizing civil and criminal contempt proceedings, *In re Contempt of Dougherty* explained that the process is civil if the contemnor refuses to do an act ordered by the court, whereas the process is criminal if the contemnor commits a forbidden act. *Id*. at 94-96, quoting *Gompers*, 221 US at 443, and *People ex rel Attorney General v Yarowsky*, 236 Mich 169, 171-172; 210 NW 246 (1926). The purpose of criminal contempt is to penalize and "operate[] *in terrorem . . .* to prevent a repetition of the offense in similar cases," and the purpose of civil contempt is to coerce the contemnor to comply with the court's order for the benefit of the opposing party. *In re Contempt of Dougherty*, 429 Mich at 95-96 (quotation marks and citations omitted). *In re Contempt of Dougherty* acknowledged, however, that "there are two types of civil contempt sanctions, coercive and compensatory." *Id*. at 97. The purpose of the compensatory fine in a civil contempt proceeding is to compensate the complainant. *Id*. at 98. The complainant's "'right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.'" *Id*., quoting *United States v United Mine Workers of America*, 330 US 258, 303-304; 67 S Ct 677; 91 L Ed 884 (1947). *In re Contempt of Dougherty*, 429 Mich at 98, concluded that

> there are three sanctions which may be available to a court to remedy or redress contemptuous behavior: (1) criminal punishment to vindicate the court's authority; (2) coercion, to force compliance with the order; and (3) compensatory relief to the complainant.

## II.  A COMPENSATORY CONTEMPT SANCTION IS NOT "TORT LIABILITY"

I agree with the majority that a proper analysis of this case should begin by defining "tort liability" for the purposes of MCL 691.1407(1), and, next, it must be determined whether a compensatory sanction for civil contempt constitutes tort liability. Further, I appreciate the majority's thoughtful approach to providing a common-law definition of "tort" as "a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages." *Ante* at 15. Most importantly, I agree with the majority that "our focus must be on the *nature* of the liability rather than the type of action pleaded," *ante* at 18, and the first focus should be "on the nature of the duty that gives rise to the claim," *ante* at 19.

Under MCL 600.1721, "any person" who suffers "actual loss or injury" caused by the defendant's "alleged misconduct" may file a petition or motion seeking remedial relief in the form of a compensatory contempt sanction. As the majority acknowledges, the reference in MCL 600.1721 to "alleged misconduct" illustrates that such a petition or motion is based on the general contempt statute, MCL 600.1701. Thus, without an act of contempt, there is no basis for liability under MCL 600.1721. At its core, a contemptuous act is an "act of disobedience" to the *court's* "ordinary exercise of *its* duties," and, "[w]ithout authority to act promptly and independently the courts could not administer public justice or enforce the rights of private litigants." *Gompers*, 221 US at 450, citing *Bessette v W B Conkey Co*, 194 US 324; 24 S Ct 665; 48 L Ed 997 (1904). Despite the fact that a compensatory sanction based on civil contempt is *primarily*

4

remedial in nature,[2] i.e., it "is for the purpose of protecting the civil rights and remedies of the party, and to compensate him for the injury or loss by the misconduct alleged," *Holland v Weed*, 87 Mich 584, 587-588; 49 NW 877 (1891), the liability imposed nevertheless arises from the party's disobedience to a court order.

As a result, I disagree with the majority that the "alleged misconduct," which serves as the basis for liability under MCL 600.1721, is "synonymous" with a traditional tort duty and its breach. *Ante* at 22. This is because, generally stated, liability arising from tortious conduct stems from a breach of one's duty to another, not the breach of an obligation owed to the court.[3] Additionally, as Justice MCCORMACK astutely explains,

---

[2] See *In re Contempt of Dougherty*, 429 Mich at 93 (noting that "a civil contempt proceeding may have a punitive, as well as remedial effect"); *Gompers*, 221 US at 443 ("It is true that either form of imprisonment has also an incidental effect. For if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the imprisonment is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change imprisonment which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa*.").

[3] Compare Black's Law Dictionary (9th ed), p 998 (defining "tortious liability" as "[l]iability that arises from the breach of a duty that (1) is fixed primarily by the law, (2) *is owed to persons* generally, and (3) when breached, is redressable by an action for unliquidated damages") (emphasis added), and *ante* at 15 n 40 (stating that a "tort" is a "'breach of a duty that the law imposes on persons *who stand in particular relation to one another*'"), quoting Black's Law Dictionary (9th ed) (emphasis added), with *Gompers*, 221 US at 450 (explaining that a party subject to a court's order cannot "make himself a judge of the validity of orders" because a court must be enabled "to enforce its judgments and orders necessary to the due administration of law and *the protection of the rights of suitors*") (citation omitted) (emphasis added), and *In re Contempt of Rapanos*, 143 Mich App 483, 496; 372 NW2d 598 (1985) ("Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to suits and *to compel*

5

there may be civil wrongs that are neither a tort nor a contract. See *post* at 2-3. Indeed, a "civil wrong" may be defined as "[a] violation of noncriminal law, *such as* a tort, a breach of contract or trust, a breach of statutory duty, or a defect in performing a public duty; the breach of a legal duty treated as the subject matter of a civil proceeding." Black's Law Dictionary (9th ed), p 1751 (emphasis added). A petition or motion for a compensatory contempt sanction could be classified as a claim based on a civil wrong in that it is based on a breach of a legal duty owed to the court; however, I disagree with the majority that the fact that a noncontractual civil wrong is at issue means that tort liability is imposed. See *ante* at 22-23. Rather, I think that the nature of the legal duty is relevant. In other words, I do not think that simply because a civil legal duty *exists* and is not a contractual duty, that a breach of that duty necessarily imposes tort liability.

Because the "alleged misconduct" under MCL 600.1721 is distinguishable from tortious conduct, the compensatory quality of tort damages and of a contempt sanction imposed under MCL 600.1721 is the only potentially relevant similarity shared by the two types of liability.[4] While I agree with the majority that the purpose of the relief

_____

*obedience to orders and decrees made to enforce those rights* and to administer the remedies to which the court has found the parties entitled.") (emphasis added).

[4] In support of its conclusion that MCL 600.1721 imposes tort liability for the purposes of the GTLA, the majority also looks to the second sentence of MCL 600.1721, which states that "[t]he payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury." I agree that MCL 600.1721 bars an action for damages that are caused by the contemptuous conduct; however, I do not see how that fact supports the majority's holding that a compensatory contempt sanction imposes tort liability. The fact that a compensatory contempt sanction, referred to as a "sum" in the statute, bars a subsequent action at law does not mean that the Legislature likened the two forms of liability. Rather, in my view, the Legislature realized that a compensatory contempt sanction has a similar remedial purpose to tort

6

sought may be a relevant inquiry when determining whether a type of liability is tort liability for the purposes of the GTLA, the nature of the remedy sought should not be *dispositive* when analyzing a claim for purposes of MCL 691.1407(1).[5] Thus, I do not think that a compensatory contempt sanction imposes tort liability simply because it may serve a similar remedial purpose as tort damages.

I also think that, in certain circumstances, characterizing a compensatory contempt sanction as serving a compensatory purpose *to the exclusion of any other purpose* may oversimplify the nature of the contempt proceeding itself. See *Gompers*, 221 US at 443 (recognizing the "incidental effect[s]," i.e., the overlapping purposes, of civil and criminal contempt). Specifically, I think that when a party subject to a court order has the *present* obligation and ability to comply, the prospect of a compensatory sanction may work hand-in-hand with coercive monetary sanctions.[6] "When the purpose of the

---

liability and, thus, the Legislature decided to bar actions at law to avoid providing a windfall to a petitioner under MCL 600.1721.

[5] Like the majority, I disagree with the Court of Appeals to the extent that it held that the nature of the damages sought in an action has "no role in determining whether the action is barred by the GTLA." *In re Bradley Estate*, 296 Mich App 31, 39; 815 NW2d 799 (2012). But I agree with the Court of Appeals to the extent it explained that, when analyzing whether a compensatory contempt sanction falls within the scope of tort liability under MCL 691.1407(1), the inquiry depends on whether the "contempt action is a cause of action that is *separate and distinct* from one that is *grounded* in tort liability." *Id.* (emphasis added). Additionally, I do not find relevant the majority's statement that the GTLA grants immunity from "tort liability," while not expressly referring to a "tort duty." It goes without saying that in order for a tort or liability resulting from a tort to exist, a tort *duty* must exist; thus, in my view, the majority's analysis appears to rest on the fact that petitioner seeks remedial relief under MCL 600.1721.

[6] See *In re Contempt of Dougherty*, 429 Mich at 99 (stating that "a coercive sanction is proper where the contemnor, at the time of the contempt hearing, is under a present duty to comply with the order and is in *present violation* of the order"); *DeGeorge v Warheit*,

7

sanction is to make a party or person comply, the trial court, in exercising its discretion, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *In re Moroun*, 295 Mich App 312, 337; 814 NW2d 319 (2012), quoting *In re Contempt of Dougherty*, 429 Mich at 98, quoting *United Mine Workers of America*, 330 US at 304 (quotation marks omitted). In my view, the compensatory contempt sanction, which is measured by the actual loss caused by the contemptuous conduct, serves a similar purpose as a coercive contempt sanction; the primary difference is that the former is retrospective, whereas the latter is prospective. A coercive contempt sanction attempts to *avoid* actual loss altogether by sanctioning present noncompliance, while a compensatory contempt sanction reimburses a petitioner's actual loss. Practically speaking, the possibility that the contumacious party may still be sanctioned after his or her ability to comply with the order has expired, will encourage the contumacious party to comply with the court order *before* his or her ability to do so has expired.[7]

---

276 Mich App 587, 592; 741 NW2d 384 (2007) ("Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply.").

[7] As the majority notes, governmental defendants are not typically immune from equitable suits. See *ante* at 20 n 54. As a result, I question whether it may be an unforeseen consequence of the majority's holding to immunize governmental defendants from compensatory contempt sanctions when those defendants are *not* immune from the imposition of an equitable order. Indeed, the losses recovered under MCL 600.1721 typically arise from a violation of such an equitable order, not from a wrong that may be remedied with tort damages. Moreover, I think that the Legislature, through the enactment of MCL 600.1721, has recognized that it would be unjust to preclude the recovery of losses sustained simply because the contemnor is not under a present duty to comply with the court order. The majority asserts that because MCL 600.1721 allows "any person" to petition or move for a compensatory contempt sanction, the purpose of

8

To conclude, I would hold that the contemptuous act itself is an integral part of imposing liability under MCL 600.1721, and the duty one owes to a court is distinguishable from a tort duty. While the common-law definition of "tort" is admittedly broad, holding that a compensatory contempt sanction amounts to "tort liability" unreasonably stretches the traditionally understood concept of a "tort" claim by not appreciating that a tort duty is not simply *any* noncontractual civil duty imposed by the law. Thus, I would conclude that the Legislature, when granting immunity from tort liability under the GTLA, did not intend that governmental defendants would be immune from compensatory contempt sanctions.

Michael F. Cavanagh

---

the statute is to compensate a private individual. That may be a purpose of the statute, but, in my view, the majority oversimplifies the context of when a petition or motion under MCL 600.1721 may be brought and ignores that any loss covered by the statute was sustained as a result of a violation of a court order. For that reason, I think that a motion or petition brought under MCL 600.1721 is simply too far removed from the common-law understanding of tort liability to conclude that the Legislature, when enacting the GTLA, thought of a compensatory contempt sanction as imposing tort liability.

9

## STATE OF MICHIGAN

## SUPREME COURT

*In re* BRADLEY ESTATE

---

NANCY MICK, Personal Representative of
the ESTATE OF STEPHEN BRADLEY,
Deceased,

      Petitioner-Appellee,

v

No. 145055

KENT COUNTY SHERIFF'S
DEPARTMENT,

      Respondent-Appellant.

---

MCCORMACK, J. (*dissenting*).

The majority holds that the governmental tort liability act's (GTLA)[1] grant of immunity to governmental agencies from "tort liability," as referred to in MCL 691.1407(1), applies to civil contempt. The majority's analysis rests entirely on two closely related propositions. First, the GTLA grants immunity from legal responsibility arising from a tort. I agree. Second, all noncontractual civil wrongs, including civil contempt, are torts. I respectfully disagree. Civil contempt does not sound in tort, and contempt sanctions of any kind simply do not impose tort liability. Furthermore, and not surprisingly, the GTLA does not provide any basis for concluding that our Legislature

---

[1] MCL 691.1401 *et seq.*

intended to grant immunity for contempt of court. Nor does the contempt statute, MCL 600.1701, provide any basis for concluding that governmental actors are not subject to all of its remedies. Because I believe that the majority confuses legal categories, and in light of the plain meaning of both the GTLA and the contempt statute, I respectfully dissent and would affirm the judgment of the Court of Appeals.

## I. CIVIL LIABILITY

### A. AN ABBREVIATED TAXONOMY OF "CIVIL WRONGS"

Very generally speaking, there are two categories of legal wrongs that may result in civil liability. One category encompasses acts that violate a *personal* right, which includes the common-law subjects of property, tort, contract, trust, and restitution. A second category encompasses acts not against the person, but rather against the *sovereign*, or acts against interests the sovereign deems worthy of protection. These acts are the subject of environmental law, securities law, and consumer law, to name a few. These examples are hardly exhaustive. But they suffice to show that the legal system imposes liability in a wide variety of contexts, either to address harms committed against citizens or, instead, to enforce rules imposed by the state or its subdivisions.

The majority begins its analysis by examining caselaw and legal dictionaries in search of a definition of the term "tort." It ultimately articulates this one: "a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages."[2] But this definition offers little guidance, first because "civil

---

[2] *Ante* at 15.

2

wrong" is itself a term of art and, moreover, because, as noted in the previous paragraph, there are many noncontractual civil wrongs that are *not* torts.

The English legal tradition recognized courts of "law," the Court of Queen's Bench, and "equity," the Court of Chancery. Though complementary, the two operated separately and independently.[3] Our modern system has abolished these distinctions, but has adopted aspects of and rules from both.[4] Civil liability sounding in neither contract nor tort is not uncommon. Breach of trust, for example, has its roots in the rules of equity and the Court of Chancery, separate and distinct from both contract and tort.[5] A trustee relationship imposes fiduciary duties, the breach of which results in liability.[6] Though trust law can well be understood as a half sibling of contract law, it cannot be reduced to

---

[3] The majority's historical analysis, attempting to illustrate that at common law all civil wrongs were either contract or tort, relies only on *in personam* actions brought in courts of law and thereby misses the larger point. See *ante* at 12 n 31, quoting *Sinclair v Brougham*, [1914] AC 398 (HL), 415 (1914) (Viscount Haldane, LC) ("[S]o far as proceedings *in personam* are concerned, the common law of England really recognizes . . . only actions of two classes, those founded on contract and those founded on tort.") (emphasis added). As a result, the majority's analysis misses an important point. Contempt is not a private wrong, but rather a wrong against the sovereign.

[4] See 1963 Const, art 6, § 5 ("The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. The distinctions between law and equity proceedings shall, as far as practicable, be abolished. The office of master in chancery is prohibited."); MCL 600.223(4) (stating that this Court has the authority to promulgate and amend general rules governing practices and procedure in this Court and all other courts of record, including but not limited to the authority "to abolish, as far as practicable, distinctions between law and equity").

[5] See 1 Restatement Trusts, 3rd, Introductory Note, p 3; Seipp, *Trust and fiduciary duty in the early common law*, 91 BU L R 1011 (2011).

[6] See MCL 700.7901.

contract. A breach of trust stems not from the violation of a bargained-for-exchange, but rather from duties arising out of the special relationship of the parties. That is, it was not considered a tort, and at common law the only available remedy was in equity. Another example is provided by the law of restitution and unjust enrichment. It is based on principles of equity; it sounds in neither contract nor tort, yet it shares characteristics of both. Restitution recognizes the need for compensation in instances when the receipt and retention of a benefit by a person without payment made to the person providing that benefit would result in injustice.[7] Consider also easements by prescription. An action to establish a prescriptive easement certainly cannot be recognized as based in contract because permissive use destroys the claim.[8] Nor is it based in tort. Like actions to quiet title, actions for a prescriptive easement are equitable in nature.[9] State and governmental entities are immune from prescriptive easements not because of the broad language of the GTLA. Rather, that immunity is conferred by an exception to the statute of limitations for actions for recovery or possession of real property.[10]

Our legal system imposes liability in many other contexts as well, even apart from the criminal justice system. A familiar example would be civil infractions. A parking ticket results in a legal obligation to pay money. But a parking infraction is not a tort, a

---

[7] 1 Restatement of Restitution and Unjust Enrichment, 3d, § 1, p 3; Sherwin, *Restitution and equity: An analysis of the principle of unjust enrichment*, 79 Tex L R 2083 (2001).

[8] *Banach v Lawera*, 330 Mich 436, 440-442; 47 NW2d 679 (1951).

[9] *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007).

[10] See MCL 600.5821(1) and (2).

breach of contract, or a crime. It is simply a municipal ordinance violation.[11] And perhaps the most essential power of any government—the power to tax—imposes legal obligations. Yet, again, tax liability does not sound in either tort or contract.[12] A comprehensive discussion of these two subjects is beyond the scope of this dissent. But both civil infractions and tax law impose civil liability in ways different from tort or contract. The obligations they impose serve to vindicate the interests of the sovereign. They do not serve to vindicate personal rights; they are not mechanisms for righting private wrongs or securing compliance to a mutual obligation.

## B. THE NATURE OF TORTS

William Prosser once observed that "a really satisfactory definition of a tort is yet to be found. The numerous attempts which have been made to define the term have succeeded only in achieving language so broad that it includes other matters than torts, or else so narrow that it leaves out some torts themselves."[13] Fundamentally, a tort action

---

[11] See MCL 600.8701 *et seq*.

[12] But consider the Internal Revenue Code's treatment of deductions for business expenses. 26 USC 162. The Code recognizes that "ordinary and necessary expenses" are, generally, deductible. 26 USC 162(a). These expenses include tort liabilities, if incurred in the ordinary course. See 26 USC 461(h)(2)(C) (discussing the timing these deductions). However, a "fine or similar penalty paid to a government for the violation of any law" is *not* deductible. 26 USC 162(f). The code treats tort liability distinctly from other civil penalties, recognizing the different policy rationales driving both. See *Tank Truck Rentals, Inc. v Comm'r of Internal Revenue*, 356 US 30; 78 S Ct 507; 2 L Ed 2d 562 (1958). This example underscores the important difference between civil wrongs against persons and those against the sovereign.

[13] Prosser & Keeton, Torts (5th ed), § 1, pp 1-2. The majority's definition of a tort— anything that cannot be classified as either breach of contract or a crime—falls within the first class of error Prosser describes.

protects a person's interest in a range of personal interests: physical security and autonomy;[14] emotional security and other intangible interests, such as privacy and reputation;[15] and personal economic security and opportunity.[16] While tort liability may lead to relief in the form of compensatory money damages, this is not the only remedy available for tortious conduct. A tortfeasor may be restrained by an injunction, and may be liable for restitution, punitive, or nominal damages.

Moreover, compensatory damages are not unique to tort law. Compensatory damages are a common remedy in actions based in contract, for example, as expectation or consequential damages. Or for an example closer to contempt, our Legislature has even provided for compensatory damages for victims of crime in the Crime Victim's Rights Act.[17] In short, tort liability does not hinge on an award of compensatory damages, and the availability of compensatory damages is not unique to tort law.

---

[14] See *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940) (civil assault and battery); *Giddings v Rogalewski*, 192 Mich 319, 326; 158 NW 951 (1916) (civil trespass).

[15] See *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597-598; 374 NW2d 905 (1985) (discussing, without deciding, whether intentional infliction of emotional distress is a viable claim in Michigan); *Pallas v Crowley, Milner & Co*, 322 Mich 411, 416; 33 NW2d 911 (1948) (right of privacy); *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005) (defamantion).

[16] See *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012) (tortious interference with a business expectancy); *Good Housekeeping Shop v Smitter*, 254 Mich 592, 596-597; 236 NW 872 (1931) (unfair competition and common-law trademark).

[17] MCL 780.751 *et seq*.

Rather, the sine qua non of a tort is the breach of a duty owed to a fellow citizen. And, although tort liability has been extended to some extent in recent decades with increased reliance on doctrines like public nuisance, classic tort liability is rooted in the common-law duties all citizens owe to one another.[18]

## C.  CONTEMPT OF COURT

Contempt of court is altogether different.  It stems from a violation of an obligation owed not to any person, but to the court itself.  Contempt does not serve to protect private rights; it serves to protect the power of the courts.  Contempt has been described as a "power of self-defense," intended to sanction "those who interfere with the orderly conduct of [court] business or disobey orders necessary to the conduct of that business . . . ."[19]  This purpose—to protect the power of the judiciary—is evidenced not only by modern cases, but also by contempt's historical roots.  It comes as no surprise that contempt of court is not discussed in *any* leading tort treatise, nor is it discussed within the comprehensive framework of tort law by the Restatement, two observations

---

[18] See 2 Dobbs, The Law of Torts (2nd ed), § 251, p 1 ("No defendant is liable for negligence unless he is under a legal duty to use care."); see also *Elbert v City of Saginaw*, 363 Mich 463, 475; 109 NW2d 879 (1961) (stating that when there is no legal duty, there can be no actionable negligence, and that "the *sine qua non* of negligence law [is] the requirement (a 'duty') that people in an ordered society must conform to a certain standard of conduct in their relations one with another").

[19] *Young v United States ex rel Vuitton et Fils SA*, 481 US 787, 820-821; 107 S Ct 2124; 95 L Ed 2d 740 (1987) (Scalia, J., concurring); see also *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995) (stating that contempt is a "wilful act, omission or statement that tends to . . . impede the functioning of a court").

which further reveal the majority's error.[20]  The common law did *not* consider contempt a tort, and the Queen's Bench would not have understood it as such.  Rather, contempt of court was viewed at common law as *criminal* in nature.[21]  While modern cases distinguish civil contempt,[22] and though indemnification damages in a contempt proceeding may resemble tort damages in certain respects, labeling contempt a tort is to ignore fundamental differences between the two.

Implicit in the majority's analysis is that all legal wrong fits neatly into one of three categories: criminal, contractual, or tortious.  The law is not so neat.  Modern Michigan cases have recognized contempt proceedings as "quasi-criminal" in nature.[23]  Nor is Michigan alone.  The United States Supreme Court has described contempt proceedings as "*sui generis*—neither civil actions nor prosecutions for offenses, within the ordinary meaning of those terms—and exertions of the power inherent in all courts to enforce obedience, something they must possess in order properly to perform their

---

[20] See, e.g., Dobbs, The Law of Torts (2nd ed); Prosser & Keeton, Torts (5th ed); Restatement Torts, 2d; Restatement Torts, 3d.

[21] In Blackstone's Commentaries on the Laws of England, contempt of court is discussed as a *public* wrong, or crime.  See 4 Blackstone, Commentaries on the Laws of England (Jones ed., 1976), pp **286-287 (discussing contempt as a crime and unique in that it could be punished by summary conviction, without trial by jury).

[22] See *Gompers v Bucks Stove & Range Co*, 221 US 418, 441; 31 S Ct 492; 55 L Ed 797 (1911).

[23] *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009), citing *In re Contempt of Dougherty*, 429 Mich 81, 90; 413 NW2d 392 (1987).

8

functions."[24]  They "are neither wholly civil nor altogether criminal."[25]  Rather, an act of contempt "may partake of the characteristics of both."[26]

As this discussion demonstrates, courts have often struggled to classify contempt as anything but *sui generis*.  While modern cases label contempt as either "civil" or "criminal," this distinction does not lead to the conclusion that civil contempt is a tort.  The distinction between criminal and civil contempt has not always been clear,[27] but the dividing line has focused on the nature of the punishment or sanction.[28]  But no matter the label, even "if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority."[29]  Though different labels may be applied, at its core a contempt action is fundamental to a court's power to effectuate its orders. [30]

---

[24] *Myers v United States*, 264 US 95, 103; 44 S Ct 272; 68 L Ed 577 (1924).  Other cases have cast off the qualifier "quasi" altogether.  See *Gompers v United States*, 233 US 604, 610; 34 S Ct 693; 58 L Ed 1115 (1914) ("If [acts of contempt] are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in the English speech.").

[25] *Gompers*, 221 US at 441.

[26] *Id*. (citation and quotation marks omitted).

[27] For a thorough historical analysis, consider Dudley, Jr., *Getting beyond the civil/criminal distinction: A new approach to the regulation of indirect contempt*s, 79 Va L R 1025 (1993).

[28] *Gompers*, 221 US at 441; see also *In re Contempt of Dougherty*, 429 Mich at 91-93, discussing *Gompers*, 221 US 418.

[29] *Gompers*, 221 US at 443.

[30] An important distinction in criminal contempt is the right to trial by jury before the sanction may be imposed.  *Bloom v Illinois*, 391 US 194, 209; 88 S Ct 1477; 20 L Ed 2d 522 (1968).

9

## D. A TORT BY ANY OTHER NAME?

A more apt comparison for contempt of court can be found not in tort law, but instead in the various legal sanctions provided by our court rules. Like the contempt power, these sanctions serve to enforce the orderliness of court proceedings. Sometimes, courts may impose the equivalent of compensatory damages for a violation of the court rules, such as when a party who files vexatious pleadings or makes vexatious discovery demands is sanctioned by having to pay the other party's costs. But these are not tort damages, nor are they unavailable against municipal litigants under the GTLA.

The majority cites several cases in which courts have drawn analogies between civil contempt and tort in support of its conclusion that civil contempt is a tort.[31] These cases do not support the majority's conclusion; they suggest only that a civil contempt petition is *analogous* to a tort claim. But the majority offers these cases in support of the separate proposition that civil contempt *is* a tort.[32] Analogies are by definition comparable, but not interchangeable. They are related, but they are not equivalent. The majority is correct that one analogous feature of these two distinct civil wrongs is that

---

[31] *Ante* at 24 n 61, citing *Dodson v Dodson*, 380 Md 438, 453; 845 A2d 1194 (2004); *Parker v United States*, 153 F2d 66, 70 (CA 1, 1946); *Vuitton et Fils SA v Carousel Handbags*, 592 F2d 126, 130 (CA 2, 1979); *Thompson v Cleland*, 782 F2d 719, 722 (CA 7, 1986).

[32] In particular, the majority insists that petitioner's contempt of court claim in this case simply "recast[s]" her immunity-barred wrongful death action. This misses the core point. Neither a contempt of court petition nor a wrongful death suit is a disguise for the other. They are separate legal theories, serving separate purposes, predicated on different wrongs. That, under the facts of this case, both may lead to a similar remedy does not make them the same. Even if Michigan did not recognize a wrongful death action, hypothetically, respondent here could still have been held in contempt for failing to carry out a lawful court order if petitioner could prove the elements of contempt.

10

both can result in compensatory liability. But the similarity ends there. Tort law imposes a duty to avoid harmful conduct deemed tortious. Contempt law imposes a duty to obey the court. These duties are fundamentally different, as are their origins, and the purposes they serve.

Even assuming, purely for argument's sake, that a similarity to tort were sufficient to subject civil contempt to the same immunity rules as tort, I believe that the Legislature has foreclosed that immunity here. For while I agree with the majority that contempt sanctions are not among the five statutory exceptions to the GTLA's grant of immunity, the GTLA does not apply in cases in which a separate statute gives rise to direct evidence that the Legislature intended to waive the state's immunity to liability.[33] The contempt statute specifically includes "[a]ll attorneys, counselors, clerks, registers, *sheriffs*, coroners, and all other persons in any manner elected or appointed to perform any judicial or ministerial services"[34] as those subject to the court's contempt power. By specifically including these governmental actors as among those who may be deemed

---

[33] The majority's discussion of waiver is incomplete. It correctly notes the five statutory GTLA exceptions, but does not meaningfully address the other areas in which the Legislature has waived immunity. "[T]here are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act." *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002), citing MCL 37.2103(g), MCL 37.2202(a), and *Manning v City of Hazel Park*, 202 Mich App 685, 699; 509 NW2d 874 (1993) (recognizing that governmental immunity is not a defense to claims brought under the Civil Rights Act because the act specifically includes the state and its political subdivisions and their agents as employers covered by the act. See also the Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* (specifically including the state and its political subdivisions as persons subject to the provisions of the act at MCL 37.1103(g)).

[34] MCL 600.1701(c) (emphasis added).

11

contemnors, the Legislature has waived any claim that they are immune from contempt liability. Further, the contempt statute does not distinguish among those parties to which its various sanctions, including indemnification damages, apply.

## II. STATUTORY INTENT

I believe the majority's premise that contempt is a tort leads it to gloss over the relevant statutory texts too quickly. The express language of both the GTLA and the contempt statute undermines the majority's conclusion that the GTLA is intended to grant governmental agencies immunity from compensatory contempt sanctions. The GTLA does not refer to contempt explicitly or implicitly, and, likewise, the contempt statute does not refer to governmental immunity in any way. Given that contempt remedies are not generally understood to be "tort" damages, surely the Legislature would have made its intentions clear if it had sought to include contempt remedies in the immunity statute. As previously noted, certain governmental actors *are* specifically included as within the scope of the contempt statute,[35] establishing that governmental actors *can* be held in contempt. Further, the compensatory remedy of the contempt statute does not limit against whom indemnification damages apply.[36]

The GTLA itself demonstrates that the Legislature knew how to use different language when it intended to grant immunity beyond tort liability. MCL 691.1407(1),

---

[35] *Id*.

[36] See MCL 600.1721.

12

which the majority relies on, states that "a governmental agency is immune from *tort* liability if the governmental agency is engaged in the exercise or discharge of a governmental function."[37] In MCL 691.1407(6), however, the GTLA does not use the term "tort liability," but instead states that "[a] guardian ad litem is immune from *civil* liability for an injury to a person or damage to property if he or she is acting within the scope of his or her authority as guardian ad litem."[38] Because "liability for an injury to a person or damage to property" encompasses tort liability, the Legislature's use of the term "civil liability" in § 1407(6) suggests a broader scope of immunity than that found in § 1407(1). When the Legislature uses different words in the same statute, they should be assigned different meanings whenever possible.[39]

The codification of the contempt power underscores the same conclusion. The Legislature did not use the word "tort" to describe the conduct it prohibits in the contempt statute. It did not use the word "tort" to describe the available sanctions. And there is more support: The Legislature did not include contempt in chapter 29 of the Revised Judicature Act, "Provisions Concerning Specific Actions,"[40] a chapter codifying

---

[37] Emphasis added.

[38] Emphasis added.

[39] See 2A Singer & Singer, Sutherland Statutory Construction (7th ed), § 46:6, p 252 ("The use of different terms within similar statutes generally implies that different meanings were intended.").

[40] MCL 600.2901 *et seq.*

13

miscellaneous tort actions including malpractice,[41] defamation,[42] and damage or waste to land.[43] Rather, contempt is given its own chapter, in keeping with its unique nature.[44]

Further, refusing to apply the GTLA here will not negatively impact the functioning of governmental agencies because governmental actors, I believe, generally avoid behavior "directly tending to interrupt [court] proceedings,"[45] do not habitually engage in "willful neglect or violation of duty,"[46] and generally refrain from "disobeying any lawful order, decree, or process of the court."[47] Even given the egregious facts of this case, respondent vigorously contests whether a contempt finding was proper. Respondent argues that there was no willful violation of the probate court order and, assuming there was, that indemnification damages were nevertheless improper because there was no causal link between the contempt and Bradley's suicide.[48] These would be issues worthy of consideration on remand if my position prevailed and they provide

---

[41] MCL 600.2912.

[42] MCL 600.2911.

[43] MCL 600.2919.

[44] MCL 600.1701 *et seq*.

[45] MCL 600.1701(a) and (b).

[46] MCL 600.1701(c).

[47] MCL 600.1701(g).

[48] Indemnification damages under MCL 600.1721 require a causal link: "If the alleged misconduct has *caused* an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant." (Emphasis added.)

14

additional hurdles that might prove fatal to petitioner's claim for indemnification damages.

## III. THE INHERENT POWER OF THE JUDICIARY

Finally, the majority's analysis concludes that the GTLA's immunity grant to contemnors is not an infringement on the court's inherent contempt power because the GTLA only applies to the contempt remedies provided by the Revised Judicature Act,[49] but not to the judiciary's "inherent contempt power," which the majority concludes is limited to coercive fines and imprisonment. While my analysis does not rest on this distinction, I believe the majority fails to satisfactorily explain why any particular remedy, and indemnification damages in particular, is somehow outside the Court's inherent contempt power, except, perhaps, because this sanction is codified in the Revised Judicature Act.[50] That codification would render the remedy not part of the court's inherent power is inconsistent with both this Court's past pronouncement that contempt statutes are "merely declaratory of what the law was before its passage,"[51] and, as the majority concedes,[52] with the fact that indemnification damages have been

---

[49] MCL 600.1715 and MCL 600.1721.

[50] See MCL 600.1721. But also codified are coercive civil contempt and criminal contempt. MCL 600.1715.

[51] *In re Chadwick*, 109 Mich 588, 600; 67 NW 1071 (1896) (citation and quotation marks omitted); see also *In re Huff*, 352 Mich 402, 415; 91 NW2d 613 (1958) ("There is inherent power in the courts . . . independent of, as well as by reason of statute, which is merely declaratory and in affirmation thereof, to adjudge and punish for contempt . . . .").

[52] *Ante* at 25 n 62.

15

recognized by Michigan contempt statutes dating back well before adoption of the 1963 Constitution.[53] And while it has been recognized that the Legislature can regulate the court's exercise of the contempt power, that regulation cannot abridge or, crucially, curtail the power.[54] An intrusion of that nature into the courts' inherent powers would violate the separation-of-powers principle.[55] But the majority fails to acknowledge this principle, or explain how the removal of an entire class of sanctions is merely regulatory and not instead a curtailment.[56] If, counterfactually, the GTLA expressly prohibited

---

[53] See 1846 RS, ch 121, § 21, the original predecessor of MCL 600.1721.

[54] *In re Chadwick*, 109 Mich at 599-600.

[55] *Id*. at 600 (stating that if the Legislature could curtail the courts' jurisdiction to hear contempt cases "it might encroach upon both the judicial and executive departments, and draw to itself all the powers of government, and thereby destroy that admirable system of checks and balances to be found in the organic framework of both the Federal and State institutions, and a favorite theory in the governments of the American people") (citation and quotation marks omitted).

[56] The power to curtail the judiciary's inherent contempt power is with this Court, not the Legislature. 1963 Const, art 6, § 4 ("The supreme court shall have general superintending control over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court."). The majority relies on *Langdon v Judges of Wayne Circuit Court*, 76 Mich 358, 367; 43 NW 310 (1889), for the proposition that the GTLA merely "'regulate[s] the mode of proceeding and prescribe[s] what punishment may be inflicted.'" *Ante* at 26 n 65. *Langdon*, however, addressed only the question of whether the circuit court had jurisdiction, as granted by statute, to hold the defendant in criminal contempt. *Id*. at 374 ("The assignments of error do not raise any question of irregularity in the proceedings, but solely the question of jurisdiction, and this is the only question we are called upon to decide."). Whether removal of an entire category of available contempt sanctions is regulatory was simply not a question before the *Langdon* Court. The majority's reliance on *Nichols v Judge of Superior Court of Grand Rapids*, 130 Mich 187; 89 NW 691 (1902), is similarly misplaced. See *ante* at 26 n 65. The *Nichols* Court did not pronounce that the Legislature had broad power to prescribe contempt punishments. Rather, the *Nichols* Court warned that this Court's past jurisprudence, including *Langdon*, "must not

16

indemnification damages as a remedy for contempt of court, that restriction would be, at the least, constitutionally questionable. The very fact that legislative restrictions on judicial powers raise constitutional questions is another reason not to interpret the GTLA as having done so. It is well established that courts should construe acts of the Legislature to avoid constitutional questions whenever possible.[57]

## IV. CONCLUSION

I agree with the majority's basic premise that "tort liability" refers to "legal responsibility arising from a tort."[58] Because I conclude that contempt *of court* is not a tort, no matter what remedy for contempt is imposed, I would not interpret the GTLA as granting immunity to governmental agencies from contempt sanctions under MCL 600.1721. Whether petitioner here can demonstrate that respondent's conduct was a legal cause of Stephen Bradley's death, whether his death constitutes an "actual loss or injury" to petitioner within the meaning of MCL 600.1721, or, as a threshold matter, whether a finding of contempt here was proper, are issues not before us.

The practical import of this case is probably limited, given that civil contempt is fairly rare and that the facts of a case giving rise to the possibility of indemnification

---

be understood as assenting to the proposition that the legislature, under the guise of regulation, may destroy a constitutional power of the courts." *Nichols*, 130 Mich at 193 (citation and quotation marks omitted).

[57] See *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307; 806 NW2d 683 (2011) ("[C]ourts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent.") (citation and quotation marks omitted).

[58] *Ante* at 16.

17

damages for civil contempt are rarer still. But the underlying principles are important. As a matter of good doctrinal bookkeeping, civil contempt is not the same as tort, and civil contempt penalties are not the same as tort liability. Although the majority is correct that, as it happens, petitioner seeks indemnification under the contempt statute after having been denied a claim for wrongful death, the majority's holding will also apply to future cases in which, unlike here, a governmental actor's contemptuous conduct has no obvious tort analogue simply because the sanction can be viewed as compensatory.

But even beyond getting the basic legal categories here correct, this Court should be hesitant to cede the judiciary's power to impose exceptional remedies in those exceptional cases in which they may be warranted for failure to heed judicial orders. This Court should, instead, safeguard the power of the judicial branch. No other branch will.

I would affirm the Court of Appeals and remand this case to the probate court for further proceedings.


                                        Bridget M. McCormack